**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| SHIRLEY MOORE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 16 cv 2861 |
| | ) | |
| VILLAGE OF SAUK VILLAGE, OFFICER | ) | |
| REBECCA SAILSBERRY, #02, GARY | ) | |
| LUKE, #128, OFFICER JOSHUA MORRIS, | ) | |
| #122, OFFICER CHAD FREDERICKSON, | ) | |
| #106, and OFFICER JACOB HOWARD, #114, | ) | |
| | ) | |
| Defendants. | ) | |

**COMPLAINT**

NOW COMES the Plaintiff, SHIRLEY MOORE, by and through counsel, SAMUELS &

ASSOCIATES, LTD., and complaining of the defendants VILLAGE OF SAUK VILLAGE,

OFFICERS REBECCA SAILSBERRY, #02, GARY LUKE, #128, OFFICER JOSHUA

MORRIS, #122, OFFICER CHAD FREDERICKSON, #106, and OFFICER JACOB

HOWARD, #114, states as follows:

**INTRODUCTION**

1. This is a civil action seeking damages against defendants for committing acts under color
   of law, and depriving plaintiffs of rights secured by the Constitution and laws of the
   United States.

2. These actions, while individual constitutional violations, were mostly taken pursuant to
   policies and practices of Defendant Sauk Village.

1

## JURISDICTION

3. This action is brought pursuant to the Civil Rights Act, 42 U.S.C. § 1983, <u>Monell v. N.Y. Dep't of Soc. Servs.</u>, 436 U.S. 658 (1978), and the Fourth and Fourteenth Amendments to the United States Constitution.

4. The jurisdiction of this Court is invoked pursuant to the judicial code 28 U.S.C. § 1331 and 1343 (a); the Constitution of the United States; and pendent jurisdiction as provided under U.S.C. § 1367(a).

## PARTIES

5. PLAINTIFF SHIRLEY MOORE is a citizen of the United States of America, who resides in Cook County, Illinois.

6. DEFENDANTS OFFICERS REBECCA SAILSBERY, #02, GARY LUKE, #128, OFFICER JOSHUA MORRIS, #122, OFFICER CHAD FREDERICKSON, #106, and OFFICER JACOB HOWARD, #114 ("Defendant Officers") were, at the time of this occurrence, duly licensed Sauk Village Police Officers. They engaged in the conduct complained of in the course and scope of their employment and under color of law. They are sued in their individual capacities.

7. DEFENDANT VILLAGE OF SAUK VILLAGE ("Village") is a municipal corporation duly incorporated under the laws of the State of Illinois, and is the employer and principal of the police officer defendants.

## FACTS

8. Plaintiff, U.S. Army retired, Private First Class Shirley Moore, was honorably discharged from service in 2013 after approximately 9 years in service to her country.

9.    Subsequent thereto, Ms. Moore was diagnosed with Post-Traumatic Stress Disorder, Mood Disorder, and Depression, among other things.  As a result of this diagnosis, Ms. Moore takes prescription medication nightly.

10.   Since returning home from duty, Ms. Moore, who lives with her mother, brother, and sister, has worked various jobs and is primarily responsible for taking care of her family.

11.   On April 19, 2015, Ms. Moore was driving her brother to work when she was involved in a minor fender-bender.  Ms. Moore's younger sister was also in the car with them.

12.   Although Ms. Moore exited the vehicle in an attempt to exchange information with the other driver, things became unnecessarily tense between the two.  In order to avoid further conflict, Ms. Moore decided to head to the police station to get an accident report.

13.   After dropping her brother off at work, Ms. Moore went to the Ford Heights Police Department to report the accident.  There, she was informed that due to the location of the accident she would have to get a report from the Sauk Village Police Department.

14.   Ms. Moore went straight from the Ford Heights Police Department to the Sauk Village Police Department.

15.   Expecting the encounter to take a matter of minutes, Ms. Moore left her younger sister in the car to wait while she went into the Sauk Village Police Department to complete an accident report.

16.   Upon entering the Sauk Village Police Department, Ms. Moore was detained by the defendant officers.

17.   The defendant officers also accused Ms. Moore's brother of being a drug dealer, and committing other elicit acts.

18. Specifically, Defendant Luke threatened and intimidated Ms. Moore into waiving her *Miranda* rights, stating words to the effect of, "if you don't sign this, you're going to be in more trouble," and "you won't be going anywhere soon."

19. Prior to this interaction, Ms. Moore had never been arrested before. In fact, she has had little to no interaction with the police in her entire life.

20. Ms. Moore explained this to the defendant officers, and Defendant Luke specifically, and the defendant officers attempted to use this against Ms. Moore by coercing her into waiving her constitutional rights.

21. As the hours passed, Ms. Moore's younger sister walked home to tell their mother that Ms. Moore had been arrested.

22. Ms. Moore's mother and sister then returned to the police station together to attempt to find out what had happened to Plaintiff, and why.

23. During the course of their interactions with the defendant officers, and Defendant Luke specifically, Ms. Moore's mother explained that Plaintiff had been diagnosed with Post-Traumatic Stress Disorder and Depression, ailments which required medication daily.

24. Neither Defendant Luke nor any of the other defendant officers ever attempted to obtain medical clearance for the prolonged confinement of Ms. Moore. In fact, the defendant officers dismissed the family's warnings regarding Ms. Moore's mental health.

25. As Ms. Moore's custody continued, she also explained to the defendant officers, and Defendant Luke specifically, that she was mentally ill as a result of her military service and needed to take her medication. Ms. Moore told the Defendant Officers that she suffered from PTSD and depression and asked to take her medication.

26.    Defendant Luke specifically, and the other defendant officers, refused to allow Ms. Moore to take her medication.

27.    Defendant Luke specifically, and the other defendant officers, likewise never attempted to speak with a medical professional, or have a medical professional see Ms. Moore, despite being fully aware of her objectively serious medical condition.

28.    By ignoring the warning and requests of Ms. Moore and her family, the defendant officers, and Defendant Luke specifically, were deliberately indifferent to Ms. Moore's objectively serious medical conditions of Post-Traumatic Stress Disorder and Depression.

29.    While Ms. Moore's mental health continued to deteriorate, Defendant Luke, without a warrant or any other legal basis, searched Ms. Moore's vehicle.

30.    In so doing, Defendant Luke purposely turned off the body camera that he wore so as to hide any evidence of his illegal search.

31.    However, when confronted by Ms. Moore's family, who was in the parking lot and witnessed the illegal search, Defendant Luke turned back on his body camera in an attempt to wrestle some sort of incriminating statement from Plaintiff's family.

32.    Defendant Luke's actions are part and parcel of a pattern and practice within the Sauk Village Police Department wherein officers purposely turn off their body cameras, microphones, and other audio/video equipment in an attempt to hide, alter, prevent the recording of, and/or destroy evidence of their misconduct.

33.    Despite having full knowledge that Departmental Officers purposely misuse their equipment, the Village does not punish officers for their misconduct.

34.    In so doing, the Village ratifies the officers' misconduct.

35. This practice is so pervasive that, even though unwritten, it has become de facto policy of the police department.

36. This de facto policy has been allowed to spread in no small part because, at all times relevant, the department did not even have a written policy for its officers outlining the proper procedures for the use of body cameras.

37. Worse, Defendants Howard, Morris, and/or Frederickson knew that Defendant Luke intended to search Ms. Moore's vehicle and had an opportunity to prevent the search to Plaintiff's vehicle from occurring, but failed to take steps to prevent the search from occurring.

38. After hours in custody, and despite the defendant officers' threats, Ms. Moore finally worked up the courage to request counsel. At this time, she also refused to answer any more questions.

39. As retaliation for Ms. Moore invoking her constitutionally-protected right to counsel and to remain silent, Defendant Luke unreasonably prolonged the scope and intrusiveness of her detention.

40. In fact, in his extraordinary occurrence report detailing the incident, Defendant Luke admits that Moore, "invoked the right to counsel which caused/prolonged her detainment."

41. As punishment for requesting an attorney, and in an attempt to coerce her into waiving her constitutional rights, Defendant Luke placed Ms. Moore in a cage.

42. At that time, any reasonable person in Ms. Moore's position would have understood his or herself to be under arrest.

43.   Defendants Howard, Morris, and/or Frederickson knew that Defendant Luke intended to arrest Ms. Moore, and had an opportunity to prevent the arrest to Plaintiff from occurring, but failed to take steps to prevent the arrest from occurring.

44.   As the sunset, Ms. Moore's hope of ever being released began to dim.

45.   The defendant officers kept Ms. Moore in physical isolation, refusing to let any of Plaintiff's family members see her.  They also refused her medication, despite multiple requests and Plaintiff's telling them that she could feel her mood beginning to change.

46.   In an attempt to keep her spirits from further darkening, Ms. Moore began to sing gospel songs while she was locked in the cage.

47.   Upon hearing this, Defendant Luke told Ms. Moore, "God can't help you."  This was just one of many threats that Defendant Luke hurled Ms. Moore during her hours in captivity.

48.   Although Defendant Officers knew Ms. Moore suffered from depression and she had repeatedly requested medication, they failed to adequately supervise her.

49.   They placed her in a cage and left her there, unguarded.

50.   They also failed to search her prior to leaving her alone in the cage.

51.   The Defendant Officer's failures are part and parcel of a long history of misconduct as it relates to the detention of citizens at their jail.

52.   On August 14, 2015, the Illinois Department of Corrections (IDOC) inspected Sauk Village's lockup facilities to see whether it complied with the law.

53.   IDOC then issued a report that found, among other things, that all Sauk Village jail officers and persons assigned jail duties are not trained and oriented in jail procedures.

54.   The inspection likewise found that there are not sufficient jail officers or qualified staff present in the jail to provide adequate supervision.

55.     Moreover, IDOC found that a visual check by personal inspection of each detainee was not conducted at least once every 30 minutes, as required.

56.     Defendant Officers' conduct here likewise violated the Illinois Municipal Jail and Lockup Standards.

57.     The defendants failed to comply with the established jail regulations and standards which provided guidance on the required precautionary measures to prevent possible suicides.

58.     For example, Illinois Municipal Jail and Lockup Standards mandate that, "a detainee with a known history of mental disorder or mental defect, or a detainee who shows evidence of such condition, shall be detained only temporarily in a municipal jail and transferred as soon as possible. In the event such a detainee is received, the detainee shall be afforded appropriate supervision as determined by the Chief of Police or his or her designee until transferred. The Chief of Police shall immediately notify the appropriate authorities regarding the mental condition of the detainee so that a transfer can be effected."

59.     Defendants violated the Illinois Municipal Jail and Lockup Standard quoted in Paragraph 57 of this Complaint.

60.     After hours in custody and being locked in a cage, Ms. Moore attempted suicide.

61.     The failure to adequately supervise Ms. Moore while she was in custody was a moving force behind her injury.

62.     Using her shoestrings, Ms. Moore tied a noose around her neck and attempted to hang herself during one of the prolonged intervals where she was left unattended.

63.     The Defendant Officers were able to cut the shoe string before Ms. Moore suffered irreparable harm.

64.    As a result of the suicide attempt, Ms. Moore was taken to St. James Hospital for evaluation.

65.    At St. James Hospital, Ms. Moore's physical examination revealed low potassium levels. Medical studies reveal that low levels of potassium are linked to depression and mood swings.

66.    The medical personnel at St. James Hospital recommended that Ms. Moore be taken for a mental health or psych evaluation as they were unable to provide one to Plaintiff.

67.    Despite Ms. Moore's objectively serious medical condition, and the recommendation of the Department's own chosen medical providers, Ms. Moore was not taken to receive a mental health or psych evaluation.

68.    Instead, in complete contravention of the medical advice, after Ms. Moore's physical examination was completed, the defendant officers placed Ms. Moore back into custody and took her back to the station where she was once again locked in a cage.

69.    Ms. Moore's need for a psych evaluation constituted an objectively serious medical condition.

70.    By ignoring Ms. Moore's objectively serious medical condition and placing her back in a cage, the defendant officers showed a deliberate indifference to Plaintiff's medical needs.

71.    Plaintiff's mother, who had been appraised of the attempt, brought Ms. Moore's prescription medication to the Station but the Defendant Officers refused to allow Ms. Moore to take it.

72.    Rather, the defendant officers kept Ms. Moore in a cage for the remainder of that night and half of the next day.

73.    After nearly a day in custody, the defendants released Ms. Moore without charging her with any crime.

74.    After Ms. Moore was released, she sought treatment with her primary mental health physician.

75.    According to Ms. Moore's primary mental health physician, the unlawful arrest and detention by the defendants has had a negative effect on Plaintiff's mental health, requiring extensive additional treatment.

76.    Within days of this incident, Ms. Moore attempted to file a complaint against the defendant officers for their gross mistreatment of her.

77.    When Ms. Moore went to the Sauk Village Police Department, however, then-Deputy Chief Sailsbery refused to take Ms. Moore's complaint.

78.    In so doing, Deputy Chief Sailsbery, who had policymaking authority for the Police Department, ratified the misconduct that occurred.

79.    Deputy Chief Sailsbery also attempted to coerce Ms. Moore from filing a complaint with anyone about this incident by hinting at the threat of criminal charges against Ms. Moore.

80.    Worse, although evidence of Ms. Moore's gross mistreatment was recorded by the camera in the cage where she was unlawfully detained, Defendants purged the video.

81.    The Sauk Village Police Department has a pattern and practice of failing to adequately train, supervise, and discipline their police officers.

82.    Illinois law mandates that all extraordinary or unusual occurrences involving detainees be reported to the Office of Jail & Detention Standards within 72 hours.

83.    Defendant Luke did not file a Report of Extraordinary or Unusual Occurrences for this incident until August 20, 2015.

84.     Further, had Ms. Moore not continued to file complaints against the Department with the agents of the Village outside of the police department (since the Police Department refused to take her complaint), then no Report of Extraordinary or Unusual Occurrences would have ever been filed in this case.

85.     Despite multiple complaints against its officers, the Village fails to investigate these complaints and/or discipline its officers.

86.     For example, in less than the last two years, there have been six complaints against Defendant Luke by citizens for his misconduct.

87.     On August 2, 2014, Defendant Luke was accused of harassment, abuse, false arrest and an illegal vehicle search by a female citizen.  Upon information and belief, this complaint was never investigated and/or Defendant Luke was never disciplined for his misconduct.

88.     On October 14, 2014, Defendant Luke was accused of dereliction of duty. Upon information and belief, this complaint was never investigated and/or Defendant Luke was never disciplined for his misconduct.

89.     On October 15, 2014, Defendant Luke was accused of harassment and abuse by a female citizen.  Upon information and belief, this complaint was never investigated and/or Defendant Luke was never disciplined for his misconduct.

90.     On November 15, 2014, and again on December 13, Defendant Luke was accused of writing a false police report, abusing his authority, an illegal search and harassment by the same citizen. Upon information and belief, this complaint was never investigated and/or Defendant Luke was never disciplined for his misconduct.

91.    On May 29, 2015, Defendant Luke was accused of lying, harassment, abuse, and false arrest by a female citizen.  Upon information and belief, this complaint was never investigated and/or Defendant Luke was never disciplined for his misconduct.

92.    Upon information and belief, none of Ms. Moore's complaints were investigated and/or none of the Defendant Officers were ever disciplined for their misconduct.

93.    As a direct and proximate result of the unlawful actions of the defendants, Plaintiff Shirley Moore was injured, including physical injuries, loss of freedom, humiliation, embarrassment, pain and suffering, fear, emotional trauma, mental anguish, the deprivation of her constitutional rights and dignity, interference with their normal life, lost time, and attorneys' fees.

<u>**COUNT I: 42 U.S.C. § 1983 – Illegal Seizure**</u>
*Against Defendants Luke, Frederickson, Morris & Howard*

94.    Plaintiff re-alleges the above paragraphs as though fully set forth herein.

95.    The seizure of Plaintiff's person performed willfully and wantonly by Defendants Luke, Frederickson, Morris, and/or Howard, as detailed above, were in violation of Plaintiff's right to be free from unreasonable seizures under the Fourth Amendment to the Constitution of the United States and 42 U.S.C. §1983.

96.    As a direct and proximate result of the above-detailed actions of the defendants, Plaintiff was injured, including the deprivation of her liberty and the taking of her person.  In addition, the violations proximately caused Plaintiff to suffer, without limitation, pain, suffering, humiliation, emotional distress, mental anguish, exposed her to public scandal and disgrace, and financial loss.

WHEREFORE the Plaintiff, SHIRLEY MONROE, purusant to 42 U.S.C. §1983, demands judgment against Defendants Luke, Frederickson, Morris, and/or Howard for

compensatory damages, punitive damages, the costs of this action and attorneys' fees, and any such other and further relief as this Court deems equitable and just.

**COUNT II: 42 U.S.C. § 1983 – Failure to Intervene (Illegal Seizure)**
***Against Defendants Luke, Morris, Frederickson, and/or Howard***

97.     Plaintiff realleges each of the foregoing paragraphs as if fully set forth here.

98.     The actions of Defendant Luke, Frederickson, Morris, and/or Howard constituted unreasonable, unjustifiable, and unlawful seizure of Plaintiff, thus violating her rights under the Fourth Amendment to the United States Constitution and 42 U.S.C. §1983.

99.     Defendants Howard, Morris, and/or Frederickson failed to intervene when Defendants Luke, Frederickson, Morris, and/or Howard unreasonably seized Plaintiff, as alleged above, even though there was no legal basis for it.

100.    The aforementioned actions of Defendants Luke, Frederickson, Morris, and/or Howard was the direct and proximate cause of the Constitutional violations set forth above.

101.    As a proximate result of the above-detailed actions, Plaintiff was injured, including the deprivation of her liberty and the taking of her person.  In addition, the violations proximately caused Plaintiff mental anguish, embarrassment, and humiliation, exposed her to public scandal and disgrace, and caused her to incur various expenses, including but not limited to attorneys' fees, all to Plaintiff's damage.

WHEREFORE the Plaintiff, SHIRLEY MONROE, purusant to 42 U.S.C. §1983, demands judgment against Defendants Luke, Frederickson, Morris, and/or Howard for compensatory damages, punitive damages, the costs of this action and attorneys' fees, and any such other and further relief as this Court deems equitable and just.

## COUNT III: 42 U.S.C. § 1983 – Illegal Search
### *Against Defendant Luke*

102.     Plaintiff re-alleges the above paragraphs as though fully set forth herein.

103.     Defendant Luke, without any lawful basis, searched Plaintiff's car without her consent.

104.     The conduct of Defendant Luke was in violation of the Fourth Amendment of the United States Constitution.

105.     The aforementioned actions of Defendant Luke were the direct and proximate cause of the Constitutional violations set forth above, and directly and proximately caused Plaintiff to suffer, without limitation, pain, suffering, humiliation, emotional distress, mental anguish, and financial loss.

WHEREFORE the Plaintiff, SHIRLEY MONROE, purusant to 42 U.S.C. §1983, demands judgment against Defendant Luke for compensatory damages, punitive damages, the costs of this action and attorneys' fees, and any such other and further relief as this Court deems equitable and just.

## COUNT IV: 42 U.S.C. § 1983 – Failure to Intervene (Illegal Search)
### *Against Defendant Frederickson*

106.     Plaintiff realleges each of the foregoing paragraphs as if fully set forth here.

107.     The actions of Defendant Luke constituted unreasonable, unjustifiable, and unlawful search of Plaintiff's property, thus violating her rights under the Fourth Amendment to the United States Constitution and 42 U.S.C. §1983.

108.     Defendant Frederickson failed to intervene when Defendant Luke unreasonably searched Plaintiff's car, as alleged above, even though there was no legal basis to search it.

109.     The aforementioned actions of Defendants Frederickson were the direct and proximate cause of the Constitutional violations set forth above.

110.   As a proximate result of the above-detailed actions, Plaintiff was injured, including the deprivation of her liberty and the taking of her car.  In addition, the violations proximately caused Plaintiff mental anguish, embarrassment, and humiliation, exposed her to public scandal and disgrace, and caused him to incur various expenses, including but not limited to attorneys' fees, all to Plaintiff's damage.

WHEREFORE the Plaintiff, SHIRLEY MONROE, purusant to 42 U.S.C. §1983, demands judgment against Defendants Frederickson for compensatory damages, punitive damages, the costs of this action and attorneys' fees, and any such other and further relief as this Court deems equitable and just.

### COUNT V: 42 U.S.C. § 1983 – False Imprisonment
*Against Defendants Luke, Morris, Frederickson, and/or Howard*

111.   Plaintiff realleges each of the foregoing paragraphs as if fully set forth here.

112.   The actions of Defendants Luke, Morris, Frederickson, and/or Howard, described above, knowingly caused Plaintiff to be arrested and imprisoned without probable cause or any other justification, constituted a deliberate indifference to Plaintiff's right under U.S. Constitution in violation of the Fourth and Fourteenth Amendment.

113.   As a proximate result of the above-detailed actions, Plaintiff was injured, including the deprivation of her liberty and the taking of her person.  In addition, the violations proximately caused Plaintiff mental anguish, embarrassment, and humiliation, exposed her to public scandal and disgrace, and caused him to incur various expenses, including but not limited to attorneys' fees, all to Plaintiff's damage.

WHEREFORE the Plaintiff, SHIRLEY MONROE, purusant to 42 U.S.C. §1983, demands judgment against Defendants Luke, Morris, Frederickson, and/or Howard for

compensatory damages, punitive damages, the costs of this action and attorneys' fees, and any such other and further relief as this Court deems equitable and just.

### COUNT VI: 42 U.S.C. § 1983 – Denial of Medical Care (Pre-Hospital)
### *Against Defendant Officers*

114.  Plaintiff realleges each of the foregoing paragraphs as if fully set forth here.

115.  As described more fully above, Defendant Officers had notice of Plaintiff's objectively serious medical condition.

116.  Despite Defendant Officers' notice, they failed to provide Plaintiff with necessary medical attention, in violation of the Fourth, Eighth, and Fourteenth Amendments of the United States Constitution.

117.  As a result of the unjustified and unconstitutional conduct of Defendant Officers, Plaintiff experienced pain, suffering, emotional distress, injury, and risked life-long impairment.

118.  The misconduct of Defendant Officers was objectively unreasonable and was undertaken intentionally with malice, willfulness, and reckless indifference to the rights of Plaintiff.

119.  Alternatively, Defendants were deliberately indifferent to Plaintiff's objectively serious medical needs, and their acts were undertaken intentionally with malice, willfulness, and deliberate indifference to the rights of Plaintiff.

120.  Plaintiff was harmed as a result of the unconstitutional conduct of Defendant Officers including, but not limited to, severe pain, physical injury, mental suffering, anguish and humiliation, and loss of dignity.

WHEREFORE the Plaintiff, SHIRLEY MONROE, purusant to 42 U.S.C. §1983, demands judgment against Defendant Officers for compensatory damages, punitive damages, the costs of this action and attorneys' fees, and any such other and further relief as this Court deems equitable and just.

### COUNT VII: 42 U.S.C. § 1983 – Conspiracy to Deprive Constitutional Rights
*Against Defendant Officers*

121.  Plaintiff realleges each of the foregoing paragraphs as if fully set forth here.

122.  As described more fully above, Defendant Officers reached an agreement amongst themselves to punish Plaintiff for a crime she did not commit, and to thereby deprive Plaintiff of her Constitutional rights, all as described more fully throughout this Complaint.

123.  In this manner, Defendant Officers, acting in concert with each other, have conspired by concerted action to accomplish an unlawful purpose by an unlawful means.

124.  In furtherance of the conspiracy, each of the co-conspirators committed overt acts and was an otherwise willful participant in joint activity.

125.  As a direct and proximate result of the illicit prior agreement referenced above, Plaintiff's rights were violated, and she suffered damages, severe emotional distress and anguish, and a deprivation of her liberty, as is more fully alleged above.

126.  The misconduct described in this Count was undertaken with malice, willfulness, and reckless indifference to the rights of Plaintiff and others.

127.  As a proximate result of the above-detailed actions of Defendant Officers, Plaintiff was injured, including the deprivation of her liberty. In addition, the violations proximately caused Plaintiff mental anguish, embarrassment, and humiliation, exposed her to public scandal and disgrace, and caused her to incur various expenses, all to Plaintiff's damage.

WHEREFORE the Plaintiff, SHIRLEY MONROE, purusant to 42 U.S.C. §1983, demands judgment against Defendant Officers for compensatory damages, punitive damages, the costs of this action and attorneys' fees, and any such other and further relief as this Court deems equitable and just.

### COUNT VIII: 42 U.S.C. § 1983 – Denial of Medical Care (Post-Hospital)
### *Against Defendant Officers*

128.   Plaintiff realleges each of the foregoing paragraphs as if fully set forth here.

129.   As described more fully above, each Defendant had actual notice that Plaintiff required a mental health or psych evaluation following her attempted suicide.  This constituted an objectively serious medical condition.

130.   Despite Defendant Officers' notice, they failed to provide Plaintiff with the necessary medical attention, in violation of the Fourth, Eighth, and Fourteenth Amendments of the United States Constitution.

131.   As a result of the unjustified and unconstitutional conduct of Defendant Officers, Plaintiff experienced pain, suffering, emotional distress, injury, and risked life-long impairment.

132.   The misconduct of Defendant Officers was objectively unreasonable and was undertaken intentionally with malice, willfulness, and reckless indifference to the rights of Plaintiff.

133.   Alternatively, Defendant Officers were deliberately indifferent to Plaintiff's objectively serious medical needs, and their acts were undertaken intentionally with malice, willfulness, and deliberate indifference to the rights of Plaintiff.

134.   Plaintiff was harmed as a result of the unconstitutional conduct of Defendant Officers including, but not limited to, severe pain, physical injury, mental suffering, anguish and humiliation, and loss of dignity.

WHEREFORE the Plaintiff, SHIRLEY MONROE, purusant to 42 U.S.C. §1983, demands judgment against Defendant Officers for compensatory damages, punitive damages, the costs of this action and attorneys' fees, and any such other and further relief as this Court deems equitable and just.

## COUNT IX: 42 U.S.C. § 1983 – Fifth Amendment Retaliation
### *Against Defendant Officers*

135.   Plaintiff realleges each of the foregoing paragraphs as if fully set forth here.

136.   Plaintiff exercised her Fifth Amendment rights.

137.   Plaintiff's exercise of her Fifth Amendment rights is a constitutionally protected activity.

138.   Plaintiff's detention was prolonged by Defendant Officers because she exercised her Fifth Amendment right.

139.   Prolonging the length and/or scope of a citizen's detention for exercising his or her constitutional right will deter others from taking part in this protected activity.

140.   As a direct and proximate result of the malicious actions of Defendant Officers, Plaintiff was injured, including, but not limited to, embarrassment, humiliation, the deprivation of her constitutional rights and dignity, damage to her reputation, interference with her normal life, severe emotional distress, and pain and suffering.

WHEREFORE the Plaintiff, SHIRLEY MONROE, purusant to 42 U.S.C. §1983, demands judgment against Defendant Officers for compensatory damages, punitive damages, the costs of this action and attorneys' fees, and any such other and further relief as this Court deems equitable and just.

## COUNT X: 42 U.S.C. § 1983 – Failure to Train, Supervise, or Discipline (*Monell* Action)
### *Against Defendant Village of Sauk Village*

141.   Plaintiff realleges each of the foregoing paragraphs as if fully set forth here.

142.   The constitutional violations detailed above were caused by the customs, policies, and practices of the defendants, as promulgated, enforced, and disseminated by the Village of Sauk Village, the Mayor of Sauk Village, the Sauk Village Board, members of the Sauk Village Board, the Sauk Village Police Department, and members of the Sauk Village

Police Department, whereby those charged with ensuring compliance with the Constitution of the United States, in this case and many other cases, instead deliberately, willfully, and wantonly encourage the infliction of physical and psychological injuries onto the citizens of Sauk Village.

143. The customs, policies, and practices that caused the constitutional violations herein include:

    a. A code of silence whereby officers refuse to report the unconstitutional and criminal misconduct of other officers, including the unconstitutional and criminal conduct alleged in this Complaint; whereby officer remain silent or give false and misleading information during official investigations to cover up unconstitutional and criminal misconduct; and whereby officers maintain loyalty to each other over the constitutional rights of citizens;

    b. The willful, wanton, and deliberately indifferent failure to train, supervise, and discipline police officers in regards to unconstitutional and criminal misconduct;

    c. Failure to adequately investigate and substantiate allegations of unconstitutional and criminal misconduct by police officers; and

    d. The failure to adequately discipline police officers that engage in unconstitutional and criminal misconduct.

144. The policies, practices, and customs herein complained of are so prevalent and widespread within the Sauk Village Police Department as to put the Village of Sauk Village policymakers on actual and implied notice that such policies exist in full force and effect.

145. Sauk Village policymakers acted willfully, wantonly, and with deliberate indifference toward the constitutional rights of Ms. Moore by accepting, monitoring, maintaining, protecting, and encouraging the unconstitutional policies, practices, and customs listed in this Complaint.

146.    By acting willfully, wantonly, and deliberately indifferent towards the constitutional rights of Ms. Moore, Sauk Village policymakers approved, encouraged, and caused the constitutional violations alleged in this Complaint.

147.    As a proximate result of the above-detailed actions of the Defendants and Sauk Village policymakers, Ms. Moore was injured, including injuries resulting from the above-detailed constitutional violations, pain, suffering, anguish, embarrassment, emotional injuries, psychological injuries, physical injuries, and permanent injuries. In addition, the violations proximately caused Ms. Moore great humiliation, exposed her to public scandal and disgrace, and caused her to incur various expenses, all to her damage.

WHEREFORE the Plaintiff, SHIRLEY MONROE, purusant to 42 U.S.C. §1983, demands judgment against Defendant VILLAGE OF SAUK VILLAGE for compensatory damages, punitive damages, the costs of this action and attorneys' fees, and any such other and further relief as this Court deems equitable and just.

## COUNT X: 745 ILCS 10/9-102 – Indemnification
### Against Defendant Village of Sauk Village

148.    Plaintiff realleges each of the foregoing paragraphs as if fully set forth here.

149.    Defendant Village of Sauk Village is the employer of the Defendant Officers.

150.    The individually-named defendants committed the acts alleged above under color of law and in the scope of their employment as employees of the Village of Sauk Village.

WHEREFORE the Plaintiff, SHIRLEY MOORE, demands that, should any individually-named defendants be found liable on one or more of the claims set forth above, pursuant to 745 ILCS 10/9-102, the Defendant VILLAGE OF SAUK VILLAGE be found liable for any judgment Plaintiff obtains, as well as attorney's fees and costs awarded.

### COUNT XI: Intentional Infliction of Emotional Distress (State Law Claim)
*Against All Defendants*

151.    Plaintiff realleges each of the foregoing paragraphs as if fully set forth here.

152.    The above-detailed conduct by Defendants Officers was extreme and outrageous, exceeding all bounds of human decency.

153.    Defendants Officers performed the acts detailed above with the intent of inflicting severe emotional distress or with knowledge of the high probability that the conduct would cause such distress.

154.    Defendant Sauk Village is sued in this to the doctrine of *respondeat superior*, in that Defendant Officers performed the actions complained of while on duty and/or in the employ of Defendant Sauk Village, and while acting within the scope of their respective employment.

155.    As a direct and proximate result of this conduct, Plaintiff did, in fact, suffer severe emotional distress, resulting in injury to his mind, body, and nervous system, including loss of sleep, mental anguish, and excruciating physical pain and emotional suffering.

WHEREFORE the Plaintiff, SHIRLEY MONROE, purusant to 42 U.S.C. §1983, demands judgment against Defendant Officers for compensatory damages, punitive damages, the costs of this action and legal costs, and any such other and further relief as this Court deems equitable and just.

**PLAINTIFF DEMANDS TRIAL BY JURY.**

Respectfully Submitted,

SHIRLEY MOORE


By:     s/ Jeanette Samuels
        One of Plaintiff's Attorneys

SAMUELS & ASSOCIATES, LTD.
3440 S. Cottage Grove, #504
Chicago, IL 60616
T: 872-588-8726
E: sam@jsamlaw.com